FILED
United States Court of Appeals
Tenth Circuit

October 19, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

LOUANNE CYPERT,

      Plaintiff-Appellant,

v.

INDEPENDENT SCHOOL DISTRICT
NO. I-050 OF OSAGE COUNTY,
a/k/a Prue Public Schools; RON
MEADOWS; GERALD JACKSON;
VALERIE TRASTER; SYLVIA
HENDRIX,

      Defendants-Appellees.

No. 10-5122

---

**ORDER**

---

Before **BRISCOE**, Chief Judge, **EBEL**, and **O'BRIEN**, Circuit Judges.

The Appellees have requested that we publish our order and judgment filed

in this case on August 15, 2011. Upon consideration, the motion is granted.

The attached opinion is substituted for the order and judgment previously

filed on August 15, 2011.

Entered for the Court,

*Elisabeth A. Shumaker*

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

August 15, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LOUANNE CYPERT,

Plaintiff-Appellant,

v.

INDEPENDENT SCHOOL DISTRICT
NO. I-050 OF OSAGE COUNTY,
a/k/a Prue Public Schools; RON
MEADOWS; GERALD JACKSON;
VALERIE TRASTER; SYLVIA
HENDRIX,

Defendants-Appellees.

No. 10-5122

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF OKLAHOMA
(D.C. No. 4:09-CV-00803-CVE-FHM)**

---

Submitted on the briefs:[*]

Blake Sonne, Sonne Law Firm, Norman, Oklahoma, for the Appellant.

Kent B. Rainey, Matthew J. Ballard, Rosenstein, Fist & Ringold, Tulsa,
Oklahoma, for the Appellees.

---

Before **BRISCOE**, Chief Judge, **EBEL**, and **O'BRIEN**, Circuit Judges.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.

**O'BRIEN**, Circuit Judge.

Bringing suit under 42 U.S.C. § 1983 and anti-discrimination statutes, Louanne Cypert alleged defendants' failure to renew her employment contracts with the Prue, Oklahoma, public school district (the District) violated her First and Fourteenth Amendment rights and was due to gender and age discrimination. She appeals from a summary judgment rejecting her claims, in which the district court determined (1) her non-renewal hearing satisfied her due-process rights, (2) she failed to show her speech was a motivating factor for the decision not to renew her full-time contract, and (3) she failed to show defendants' reason for not renewing her part-time contract resulted from discrimination. We affirm.[1]

### *Background*

Defendants are the District and four individuals who were members of the Prue Board of Education (the Board). The District is small, with a total of approximately 310 students. Cypert was the high school secretary with a full-time support-employee contract, which included employment security provisions. She also had an extra-duty contract for a part-time job as concession director. She does not claim the extra-duty contract contained any employment security provisions.

---

[1]    Our jurisdiction derives from 28 U.S.C. § 1291.

In February 2008, defendant Ron Meadows was elected to the Board with a campaign calling for change, including the dismissals of some staff. According to testimony of Melvina Prather, the Interim Superintendent from April to June, 2008, when she met with Meadows on several occasions, he spoke about firing certain employees, including Cypert, because he did not think they could do their jobs. Another Board member, defendant Gerald Jackson, was present with Meadows on one of those occasions.[2] Jackson also said he wanted those employees fired. Prather refused to dismiss the employees. In the summer of 2008, the Board renewed Cypert's full-time contract for 2008-2009, but declined to renew the extra-duty contract, instead awarding it to two teachers.

In the fall of 2008, the Board became concerned about the District's finances. It initiated a financial investigation and, in November, terminated the treasurer's employment.[3] In December, it hired Douglas Jones to be the new assistant treasurer. At the January 2009 Board meeting, Jones advised the Board

---

[2]     Plaintiffs submitted both an affidavit and deposition testimony from Prather. The two were not consistent, as the affidavit stated Jackson several times asked her to fire the employees, but the deposition testimony identified only one meeting involving Jackson. We rely on the deposition testimony because the deposition gave Prather the opportunity to explain the statements in the affidavit.

[3]     The termination of the treasurer's employment is the subject of another appeal before this court. *See Bunch v. Indep. Sch. Dist. No. I-050*, No. 10-5109, 2011 WL 3562932 (10th Cir. Aug. 15, 2011). An appeal also was brought by other employees whose employment was terminated during the 2008-2009 school year. *See James v. Indep. Sch. Dist. No. I-050*, No. 10-5124, 2011 WL 3836444 (10th Cir. Aug. 31, 2011).

it was in a financial crisis. By May, he calculated the District would have $161,000 to carry into 2009-2010, more than he had earlier predicted, but still less than the recommended minimum of $250,000. He was "cautiously optimistic," but continued to believe the District "was still in financial difficulties." Aplee. Supp. App. at 204. He expected state aid money to decrease, and he "was advising all the schools that [he was] work[ing] with to hold all expenses to the absolute minimum going into [the next school] year." *Id.* at 205.

The Board decided to notify eleven support employees that their contracts may not be renewed for the 2009-2010 school year due to the District's finances. Cypert was the only employee who requested and went through a pre-non-renewal due-process hearing, which took place on June 8, 2009. Jones did not attend. The new Superintendent, Phyllis Tarrant, testified to the District "making some recovery but, not enough that we would have an adequate fund to carry over for the 2009-2010 school year." *Id.* at 139. No decisions had been made regarding cost reductions, but she planned to present various alternatives, which might include dividing the duties of the high school secretary among other personnel. Under cross-examination, Tarrant admitted they did not yet know how much the District would receive from the state for the next year, and without that information the Board could not make any decisions about how to structure the school system and which support staff to re-employ. Cypert testified to having performed her job without problems for years; she called no other witnesses.

-5-

After an executive-session discussion, which Tarrant also attended, the Board found the District was facing a financial crisis and needed to cut expenses for 2009-2010. A sufficient response to the problem, it concluded, required reductions in personnel, and reorganization of the District's schools might reduce the number of office staff needed. It voted not to renew Cypert's contract as a cost saving measure. A few weeks later, the District ended the school year with a carryover of $330,000. During the summer of 2009, the Board decided to renew the contracts of every support employee who had been notified of possible non-renewal in May 2009. It also kept the position of high school secretary but did not offer to employ Cypert to fill it. It hired another person instead.

Cypert claimed the non-renewal hearing did not satisfy her right to due process. She also alleged the failure to renew her contract was in retaliation for her exercise of free speech rights because, in the fall of 2008, she had signed a state-court petition calling for a grand jury investigation into the activities of Board members. She also alleged the non-renewal of her extra-duty contract violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Age Discrimination in Employment Act, 29 U.S.C. § 623. Cypert appeals from the summary judgment.[4]

---

[4] Cypert does not appeal from the dismissal of her state-law claims. The district court declined to exercise supplemental jurisdiction over them after rejecting the federal claims.

*Analysis*

"We review *de novo* a grant of summary judgment, applying the same standard that governs the district court." *Lauck v. Campbell Cnty.*, 627 F.3d 805, 809 (10th Cir. 2010). We view "the evidence in the light most favorable to the appellant." *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## I. Due Process

No defendant contends Cypert did not have a protected property interest in her employment or was not entitled to due process in connection with the non-renewal of her contract. Cypert, on the other hand, does not now contend her employment could not be terminated for legitimate fiscal reasons. Instead, she alleges four procedural due-process violations: (1) a biased tribunal; (2) Tarrant attended the executive session; (3) she was not allowed to confront or cross-examine Jones, even though his financial calculations were the asserted basis for not continuing her employment; and (4) the hearing was a sham because there was no financial crisis.[5]

---

[5] Before the district court, Cypert alleged both procedural and substantive due process violations. The trial court decided the allegations did not rise to the level of a substantive due process violation. Her brief mentions substantive due process only in passing. She has waived our review of that issue. *See Therrien v.*

(continued...)

**A.**                          **Impartial Tribunal**

Cypert argues the four individual defendants were biased, thus depriving her of an impartial tribunal. As the district court noted, however, defendant Meadows was not a member of the Board on June 8, 2009, and he took no part in the Board's decision not to renew Cypert's contract. Because he was not a decisionmaker, his impartiality is irrelevant to Cypert's hearing. Therefore, we focus on defendants Jackson, Traster, and Hendrix.

"Impartiality of the tribunal is an essential element of due process." *Riggins v. Goodman*, 572 F.3d 1101, 1112 (10th Cir. 2009). Impartiality may be affected by a "personal or financial stake" in the outcome or "personal animosity." *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 491-92 (1976). But because "a person claiming bias on the part of an administrative tribunal must overcome a presumption of honesty and integrity in those serving as adjudicators," a "substantial showing of personal bias is required to disqualify a hearing officer or tribunal." *Riggins*, 572 F.3d at 1112 (quotation omitted); *see also Hicks v. City of Watonga*, 942 F.2d 737, 746-47 (10th Cir. 1991) ("[T]here must be some substantial countervailing reason to conclude that a decisionmaker is actually biased *with respect to factual issues being adjudicated*." (emphasis added) (quotation omitted)).

---

[5](...continued)
*Target Corp.*, 617 F.3d 1242, 1253 (10th Cir. 2010).

In assessing the bias issue the district court concluded the only probative evidence of the Board's bias was Prather's testimony. Prather recalled speaking to Jackson on one occasion in spring 2008 about firing Cypert along with other employees. Cypert asserts the court ignored the deposition testimony of Prather's successor, Randy Cottrell, and a fifth Board member not named as a defendant, Donald Horton. But Cottrell's testimony is irrelevant because it did not involve Cypert. And Horton's testimony does not help her. Horton recalled Board members discussing Cypert in executive sessions, but their discussion focused only on her job performance. Horton did, however, offer an opinion, to wit: Meadows and Jackson had formed a plan to dismiss the targeted employees, and Traster and Hendrix went along. The problem is his opinion testimony is unsupported by facts. "Unsubstantiated allegations carry no probative weight in summary judgment proceedings. To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citation omitted). Horton's testimony cannot stand in the way of summary judgment.

Thus, as the district court concluded, the only admissible evidence of Jackson's bias is one statement to Prather, about a year before the hearing. That is not a substantial showing of actual bias with regard to the issue facing the Board, i.e., whether, in early June, 2009, the District's financial situation

cautioned against renewal of Cypert's contract. Nothing in this record points to personal animosity or other bias against Cypert by Traster and Hendrix, beyond their association with Meadows and Jackson. Association alone does not suggest disqualifying bias. *See Hicks*, 942 F.2d at 748.

**B.** **Non-Board Member Attending Executive Session**

Addressing Tarrant's attendance at the executive session, Cypert asserts, without citation, "Having the very person submitting a recommendation attend the executive session where the decision is discussed without the Plaintiff does not meet the test of a 'fair' hearing." Aplt. Opening Br. at 23.

It does not appear this circuit has decided whether an administrator's presence during a school board's deliberation is a due-process violation. The question arose in *Ambus v. Granite Board of Education*, 975 F.2d 1555, 1569 (10th Cir. 1992), *modified on reh'g on other grounds*, 995 F.2d 992 (10th Cir. 1993) (en banc), but was not decided because the plaintiff's appellate argument was "based on evidence not before the district court." Other courts have concluded an administrator's mere attendance in a board's executive session does not violate due process. *See Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 926-27 (6th Cir. 1988); *Gorman v. Univ. of R.I.*, 837 F.2d 7, 10, 15 (1st Cir. 1988); *Lamb v. Panhandle Cmty. Unit Sch. Dist. No. 2*, 826 F.2d 526, 529

(7th Cir. 1987). Because there is no evidence of anything beyond the Superintendent's presence, we see no due-process violation.

**C.**                                    **Confrontation/Cross-Examination**

Cypert was able to confront and cross-examine Tarrant at the hearing, but Jones did not appear. She argues due process demanded an opportunity for her to confront and cross-examine Jones because his financial analysis was at the heart of the decision-making process. However, she has not shown an unsuccessful attempt to seek his attendance. Where a plaintiff was not "inhibited or restricted from" calling a missing witness, we have held, she cannot complain about her inability to confront the witness at a due-process hearing. *West v. Grand Cnty.*, 967 F.2d 362, 369 (10th Cir. 1992).

**D.**                                    **Sham Hearing**

Finally, Cypert argues the entire hearing was a sham because, in actuality, the District was not facing a financial crisis. Indeed, the District ended the year with a carryover of $330,000, well in excess of the recommended minimum, and every other employee targeted for possible reduction in force for the 2009-2010 school year was retained. Her analysis, however, relies heavily on hindsight. The District's financial situation had been an issue of concern to the Board since the late fall of 2008. At the time of the hearing in June 2009, Jones had told the Superintendent the District likely would have insufficient carryover funds for the 2009-2010 school year. Nothing of record even remotely suggests Jones harbored

a bias against Cypert or deliberately manipulated his figures to support a nonexistent financial crisis.  At most, his analysis turned out to be wrong, but "errors, by themselves, do not show that the hearings were shams."  *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 928 (7th Cir. 2007).

Cypert notes the Board did not offer to re-hire her in the high school secretary position even though it ultimately kept the position.  This fact is somewhat troubling.  But it stands alone, with the record containing little to no evidence regarding the decision-making process.  Thus, it is insufficient to create a genuine issue of material fact as to whether the hearing was a sham.  Cypert also relies on Tarrant's admission that her contract was not renewed because she availed herself of her right to a hearing, thus requiring the Board to make a decision before it had all the necessary information.  Because this admission simply states an inference evident from the hearing testimony, it does not create a genuine issue of material fact as to a sham hearing, either alone or in combination with the later failure to re-hire.

## II.    Free Speech

Cypert next quarrels with the district court's resolution of her retaliation claim, i.e., she was non-re-employed for exercising her First Amendment rights. We apply the five-step framework established by the Supreme Court in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *Pickering v. Board of Education*, 391 U.S. 563 (1968):

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010) (quotation omitted). "The first three steps . . . are issues of law to be resolved by the district court, while the last two are ordinarily for the trier of fact." *Id.* (quotation omitted).

One basis for Cypert's First Amendment claim was her signature on the petition for a state-court grand jury investigation and, relatedly, the two weekends she spent soliciting signatures for the petition. Another was her involvement in an investigation of defendant Meadows' son for a theft, which occurred at some unspecified time before the hearing. The district court concluded her allegations were insufficient to show protected speech. The only evidence she offered of a specific public statement was her signature on the petition. With regard to that, the court decided she satisfied the first three *Garcetti/Pickering* steps but failed to establish her signature on or involvement with the petition was a motivating factor behind the non-re-employment.

Cypert tells us she "has produced sufficient evidence of statements and actions that she engaged in as a citizen relating to matters of public concern."

-13-

Aplt. Br. at 28. But with regard to her involvement in the investigation, the record contains only general allegations failing to identify with particularity any statements or actions sufficient to satisfy her burden to identify the specific instances of speech underlying her claim. *See Craven v. Univ. of Colo. Hosp. Auth.*, 260 F.3d 1218, 1226 (10th Cir. 2001) (discussing inadequate identification of speech in appellate argument). She did not establish the occurrence and/or the content of the speech regarding the investigation sufficiently for the court to even begin the *Garcetti/Pickering* analysis.

With respect to the grand jury petition, Cypert argues the fourth factor is ordinarily a jury question. She is generally correct, but summary judgment is appropriate when "there simply is no evidence in the record from which a trier of fact could reasonably conclude the [protected speech] was a motivating factor in [the plaintiff's] termination." *Rohrbough*, 596 F.3d at 750; *see also Maestas v. Segura*, 416 F.3d 1182, 1188-92 (10th Cir. 2005) (affirming a grant of summary judgment because plaintiffs failed to present sufficient evidence of causation).

Cypert relies on temporal evidence – her non-re-employment came in June 2009, some eight months after the filing of the petition in September 2008. But a time lapse exceeding three months is insufficient to establish causation by temporal proximity alone, *see Lauck*, 627 F.3d at 815-16; *Meiners*, 359 F.3d at 1231, and Cypert failed to shoulder her burden to offer additional evidence of causation. She showed the Board was aware of the grand jury petition, but failed

-14-

to show that any Board member was aware of her signature on or involvement with it. She admitted to never speaking to any Board member about the petition or making any statements supporting the petition in the presence of a Board member. In addition, intervening circumstances "tend to undermine any inference of retaliatory motive and weaken the causal link." *Maestas*, 416 F.3d at 1189. The Board's investigation of the District's finances and the resulting financial uncertainty at the time of Cypert's due-process hearing were such events.

## III. Discrimination Claims

Cypert does not claim a protected property right in her extra-duty concession director contract and makes no due process argument with respect to the Board's failure to renew it. She makes only discrimination claims. She appeals from the summary judgment with respect to them. The district court decided she failed to establish a prima facie case of sex or age discrimination, and even if she had, she failed to produce any evidence that defendants' asserted reason for non-renewal of the contract was a pretext for the type of discrimination addressed by Title VII and the ADEA. *See Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007) (describing the three-part burden-shifting analysis applicable to gender and age discrimination claims based on circumstantial evidence). Cypert relies on an apparent contradiction. The Board did not renew her concession director contract because only certified staff (teachers) could hold such contracts. Yet it gave a younger male support

-15-

employee an extra-duty contract as a sports coach only weeks later (an undisputed fact).

For purposes of our analysis, we assume Cypert established a prima facie case. Defendants assert they denied Cypert a contract renewal because the negotiated agreement for 2008-2009 requires extra-duty contracts to be given to teachers. Their contractual interpretation is wrong. The negotiated agreement permitted teachers to enter into extra-duty contracts, but nothing in the extra-duty section (the only section defendants cite) *required* the District to limit such contracts to teachers. But that does not end the discussion.

Cypert failed to establish defendants' proffered reason for not renewing her contract was a pretext for gender or age discrimination. The record reveals little about renewal preference for extra-duty contracts, but it appears the only preference was for teachers over support employees. In her deposition Cypert acknowledged that it had been the District's practice to offer extra-duty contracts first to teachers; only if no teacher applied would the contracts be offered to support employees. In the summer of 2008, Cypert was told she would not be awarded the contract for 2008-2009. Instead, the contract was awarded to teachers. Even if defendants were mistaken in relying on the Negotiated Agreement to deprive Cypert of the concession director contract, they acted consistently with the District's general, non-discriminatory practice of giving teachers priority in awarding extra-duty assignments. And since the contract was

awarded to two female teachers whose ages are not revealed by the record Cypert has not established pretext.

Admittedly, a younger male support employee was given an extra-duty contract, but the record indicates the Board members mistakenly believed he was certified to teach when they initially offered him the contract. "[A] challenge of pretext requires us to look at the facts as they appear to the person making the decision to terminate plaintiff." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000). "Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision." *Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007).

AFFIRMED.[6]

---

[6]     Because the district court declared certain materials stricken and Cypert has not appealed that ruling, we have not considered those materials in making our decision. Defendants' motion to strike is DENIED.