**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 31, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

BLESSING N. IGWE,

        Plaintiff-Appellant,

v.

SAINT ANTHONY'S HOSPITAL,

        Defendant-Appellee.

No. 11-6099
(D.C. No. 5:10-CV-00474-HE)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**EBEL**, Circuit Judge.

---

Blessing N. Igwe sued her former employer, Saint Anthony's Hospital

("SAH"), alleging that SAH discriminated and retaliated against her, on the basis

of her race and national origin, in violation of Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e-2, 42 U.S.C. § 1981, and state law. She also alleged that

SAH terminated her in retaliation for filing a workers' compensation claim and

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

that it tortiously interfered with her business relations, in violation of state law. The district court granted SAH summary judgment on all claims. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

The parties are familiar with the facts and procedural history in this case, the district court detailed both, and we discuss only the material necessary to understand the district court's decision. *See Igwe v. St. Anthony's Hosp.*, ___ F. Supp. 2d ___, 2011 WL 1343346, at *1-3 (W.D. Okla. 2011). Ms. Igwe, who was born in Nigeria, began working as a registered nurse at SAH in 2004. SAH promoted her to Charge Nurse in the Child Adolescent Residential Unit in 2005. In January 2008 Margaret Martin, the only individual Ms. Igwe claims discriminated and retaliated against her, became Ms. Igwe's supervisor.

In June 2008, Ms. Martin disciplined Ms. Igwe for violating SAH's weapons policy. After meeting with Ms. Martin and the Director of Behavioral Medicine about the incident, Ms. Igwe sent two letters to the Director, complaining that Ms. Martin had discriminated against her, and identifying what she believed to be "specific instances" of "disparate treatment." *Id.* at *1 (internal quotation marks omitted). Ms. Martin responded to the allegations in a memo to SAH's human resources department. SAH investigated Ms. Igwe's allegations but found that her claims could not be substantiated.

At the end of December 2008, the mother of a minor patient, J.T., complained to the child's therapist that she had not been informed that her child

had been physically restrained by being placed in a "therapeutic hold." *See id.* at

*2 (describing therapeutic hold procedures and employees' corresponding duties).

As a result of the restraint, J.T. sustained several small bruises. On December 27,

Ms. Martin reported the incident to the Oklahoma Department of Human

Services' Office of Client Advocacy ("OCA"), as required by state law.

The OCA, an independent state agency, investigated the December 27

incident to determine whether Ms. Igwe or Jimmy Ezell, a Mental Health

Technician ("MHT"), engaged in caretaker misconduct. Ms. Igwe denied

knowledge of the therapeutic hold and denied that others had sought her

assistance with J.T. The OCA issued a report on March 4, 2009, determining that

there was

> sufficient evidence to support a finding of caretaker misconduct by
> RN Igwe. On 12-27-08, at least one therapeutic hold was initiated on
> Resident [J.T.]. MHT Ezell conducted the hold which was witnessed
> by MHT Stamps and verified by [J.T.]. Igwe failed to respond to a
> request for assistance and did not monitor or document the evening
> restraint as required by facility policy. At a minimum, Igwe should
> have responded to the ongoing commotion and escalating behaviors
> which ultimately led to [J.T.] being restrained.

*Id.* (quoting OCA report) (internal quotation marks omitted). The OCA report

further determined that the evidence was "insufficient to support a finding of

caretaker misconduct by MHT Ezell." *Id.* (internal quotation marks omitted).

In February 2009, while SAH's evaluation of Ms. Igwe's performance was still underway, she was injured at work by a patient. Her doctor placed her on light duty.

On March 19, 2009, SAH, relying on the OCA's investigation findings, terminated Ms. Igwe's employment for violating its Group III Rule "prohibit[ing] behavior that jeopardized or could have jeopardized a patient's recovery." *Id.* at *3.[1] It is undisputed that "[a] violation of a Group III Rule results in immediate termination." *Id.*; R. at 189.

In January 2010, she applied for a job with OU Medical Center and asserts she was not hired because SAH gave her a bad reference.

Ms. Igwe filed this lawsuit a few months later. After discovery, the district court considered the parties' filings and concluded that Ms. Igwe "failed to submit sufficient evidence to warrant submission of any of her claims to a jury." *Igwe*, 2011 WL 1343346, at *9.

The court began its analysis with Ms. Igwe's discriminatory discharge claim. It noted her reliance on the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and it identified the elements of a prima facie case of termination based on race and

---

[1] *See also Igwe*, 2011 WL 1343346, at *9 n.13 (citing Ms. Igwe's deposition testimony to demonstrate her agreement with the proposition "that a Charge Nurse could place the recovery of a patient in jeopardy by refusing to assist in a hold and that such action would be a Group III violation justifying termination").

national origin.  Because SAH did not challenge Ms. Igwe's ability to establish a prima facie case, the court focused on whether she presented evidence sufficient to show there was a genuine issue of material fact regarding SAH's proffered reason for terminating Ms. Igwe's employment.  That is, whether SAH's reliance on the OCA's report in finding a Group III Rule violation was mere pretext.

It found that SAH's prior treatment of Ms. Igwe, specifically Ms. Martin's responses to Ms. Igwe's accusations, did not "warrant an inference of discriminatory animus based on race or national origin."  *Igwe*, 2011 WL 1343346, at *5.  And it rejected Ms. Igwe's claims that she was treated differently than MHT Ezell, who she contended was similarly situated, stating:

> [t]he crux of plaintiff's [discriminatory discharge] argument is that she disputes the OCA findings that she, and not Ezell, committed caretaker misconduct.  However, "a challenge of pretext requires a court to look at the facts as they appear to the person making the decision to terminate, not the aggrieved employee." *Green*[ *v. New Mexico*], 420 F.3d [1189,] 1191 n. 2 [(10th Cir. 2005)].  Plaintiff has not met her burden of pointing to some admissible evidence showing that SAH's proffered explanation for her termination is mere pretext.  Defendant is entitled to summary judgment on her discriminatory discharge claims under Title VII, § 1981 and state law.

*Id.* at *6; *see also id.* at *9 n.30 (finding that Ms. Igwe's public policy tort claims for discriminatory discharge, based on *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989), "fail due to the same evidentiary deficiency that precludes her federal claims").  Ms. Igwe relied on *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011), arguing that the report was orchestrated to justify her termination.  The

district court distinguished *Staub*. That case was based on a biased internal report, while here SAH relied on the report of an independent state agency.

Turning to Ms. Igwe's retaliation claims, the court found SAH entitled to summary judgment because Ms. Igwe failed to offer any evidence connecting her termination to her complaints of discrimination, or demonstrating that SAH's alleged bad job reference was the result of her having filed a complaint with the EEOC. *See Igwe*, 2011 WL 1343346, at *6.

As to her claim that SAH terminated her in March 2009 in retaliation for seeking workers' compensation after being injured in February 2009, the court also found SAH entitled to summary judgment. In doing so, it acknowledged that while temporal proximity may be evidence of a retaliatory discharge, Ms. Igwe, who relied *only* on temporal proximity, failed to make a prima facie case of retaliatory discharge under the Oklahoma Workers' Compensation Act. *See id.* at *7-8.

Finally, the district court found SAH entitled to summary judgment on Ms. Igwe's state law claim that SAH tortiously interfered with her business relations by giving her a bad employment reference. Noting SAH's objection to Ms. Igwe's reliance on her own testimony–and no other evidence–to support her claim, the court concluded that there is "no tortious interference claim" when there is no "admissible evidence of interference by defendant." *Id.* at *8.

On appeal, Ms. Igwe contends the district court erred in finding that she had not met her burden of showing SAH's proffered explanation for her termination was mere pretext. She takes issue with the district court's finding that she failed to offer any evidence linking her termination or alleged bad job reference to protected activity. And she challenges, in conclusory fashion, the district court's determinations that SAH was entitled to summary judgment on her claims of workers' compensation retaliation and tortious interference with business relations.

We review de novo the district court's grant of summary judgment, applying the same legal standard as the district court under Fed. R. Civ. P. 56(a). *See Cypert v. Indep. Sch. Dist. No. I-050*, 661 F.3d 477, 480 (10th Cir. 2011). In applying this standard, we view "the evidence in the light most favorable to the appellant." *Id.* (internal quotation marks omitted).

Having undertaken a thorough review of the parties' briefs, the record, and the applicable law, we conclude that Ms. Igwe has not shown any reversible error in this case. Accordingly, we AFFIRM the judgment of the district court for substantially the same reasons stated in its published order granting SAH's motion for summary judgment.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge

-7-