BACHARACH, Circuit Judge,
concurring in the denial of rehearing en banc.
I continue to respectfully disagree with the panel majority’s disposition of the claim involving unconstitutional conditions. Nonetheless, I do not believe that we should take the case en banc.
I. Merits
On the merits, the critical issue involves the element of likelihood of success. On this element, I believe our precedent requires us to apply the abuse-of-discretion standard. See Verio v. Martinez, 820 F.3d 1113, 1128 (10th Cir. 2016).
Application of this standard makes sense here, for the likelihood-of-success element requires us to predict the fact-finder’s ultimate determination after a full-blown trial. That prediction would involve an intrinsically factual issue: the intent of the Governor in issuing the Directive.
In my view, it is appropriate to apply the abuse-of-discretion standard when the district court must predict what the trier of fact would ultimately find. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996) (applying the abuse-of-discretion standard to the likelihood-of-success inquiry when predicting the eventual outcome on the merits). As a result, I believe that we should follow our precedent in Verio v. Martinez, which establishes the abuse-of-discretion standard on likelihood of success.
As stated in my panel dissent, I do not believe that the district court abused its discretion on the likelihood-of-success inquiry. The district court had little to go on because PPAU had not presented any testimony and its only documentary evidence about the controversial videotapes involved two web articles in the Huffington Post and an email transmitting an article from a website called “Media Matters for America.” PPAU said that each governmental agency investigating the videotapes had exonerated Planned Parenthood, but PPAU did not present any evidence from a governmental source or the actual videotapes.
Though PPAU presented virtually no evidence, everyone agreed that Governor Herbert had attributed the Directive to his own reaction to the Planned Parenthood videotapes. To prevail, PPAU had to prove that Governor Herbert’s stated reason for the Directive was pretextual—that his true motivation was to punish PPAU for exercising its constitutional rights.
Will PPAU be able to prove that at trial? When given the opportunity to do so at the preliminary injunction hearing, PPAU presented no live testimony and *1307 virtually no documentary evidence. In these circumstances, the district court had the discretion to predict that PPAU would not satisfy its burden of proof at trial. Thus, I believe that the panel should have affirmed the denial of a preliminary injunction on the claim of unconstitutional conditions.
II. En Banc Consideration
Though I respectfully disagree with the panel’s disposition, I do not favor en banc consideration because I doubt that the panel opinion will' significantly affect future appeals.
Like Judge Gorsuch, I believe that the panel’s review of the district court’s ruling was more searching than the abuse-of-discretion standard permits. But this disagreement is unlikely to affect future cases, for the panel stated that it was reviewing the district court’s order for an abuse of discretion.
Though I respectfully disagree with the panel majority on how it applied this standard, my disagreement involves the application of the standard rather than the standard itself, for the panel did not articulate a more searching standard of review (such as de novo review) on likelihood of success. Nor did the panel majority disavow the need for clear, unequivocal proof to justify a preliminary injunction. Thus, I do not believe that the panel opinion will significantly affect future appeals.
GORSUCH, Circuit Judge, joined by TYMKOVICH, Chief Judge, and HARTZ and HOLMES, Circuit Judges, dissenting from the denial of rehearing en banc.
A great deal about this case is undisputed. Shortly after the public release of videos allegedly showing Planned Parenthood officials negotiating the sale of fetal tissue, the Governor of Utah announced his belief that the conduct was illegal and warranted the suspension of public funding for four programs run by Planned Parenthood Association of Utah (PPAU), the local Planned Parenthood affiliate. PPAU responded by bringing a lawsuit and seeking a preliminary injunction to force the State’s continued funding of the four programs in question. As litigated by the parties, the preliminary injunction motion turned in significant measure on the question whether the organization could show that it was likely to succeed at trial on its unconstitutional conditions claim. And even on that claim the parties’ dispute proved pretty narrow, for everyone agreed on the law. If the Governor discontinued funding because of the group’s affiliation with those accused of illegally selling fetal tissue—as he said he did—the parties agreed that no constitutional violation had taken place. But if the Governor discontinued funding for a different and secret reason— in retaliation for the group’s advocacy of lawful abortions—both sides accepted that a constitutional violation had occurred. •
So it is that the question of preliminary relief on PPAU’s unconstitutional conditions claim hinged on a question of fact: what was the Governor’s intention in suspending funding? See Judge Briscoe Concur. at 1303 (“[I]t is true that PPAU’s likelihood of success ultimately turned on the assessment of evidence concerning Governor Herbert’s motives_”). On the preliminary evidentiary record before it, the district court found that the Governor’s stated intention appeared to be his true intention and that PPAU hadn’t shown it was likely to prove otherwise at trial. Accordingly, it denied the motion for preliminary relief. But when the case reached this court, a panel disagreed and ordered the Governor to fund PPAU. In doing so, I respectfully submit, the panel acted inconsistently with this court’s previously uniform practice when it comes to questions *1308 concerning our standard of review and the burden of proof, questions of considerable legal significance. See Fed. R. App. P. 35(a) (en bane review is appropriate to “maintain uniformity of the court’s decisions; or ... [if] the proceeding involves a question of exceptional importance”).[1] *
Consider first the standard of review. Because a preliminary injunction is a form of discretionary equitable relief—and a temporary one at that—we review the district court’s decision only for abuse of discretion. Petrella v. Brownback, 787 F.3d 1242, 1256 (10th Cir. 2015). Where, as here, everything turns on the resolution of a factual dispute, that means “[w]e will not challenge [the district court’s] evaluation [of the evidence] unless it finds no support in the record ... or follows from a plainly implausible, irrational, or erroneous reading of the record.” Heideman v. S. Salt Lake City, 348 F.3d 1182, 1188 (10th Cir. 2003); Fed. R. Civ. P. 52(a)(6) (factual findings may be set aside only if clearly erroneous). This deferential standard applies even when the district court makes factual findings concerning documentary proof rather than live testimony. Anderson v. Bessemer City, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). And no doubt that kind of deference is especially appropriate where, as here, the fact-finding district judge at the preliminary injunction stage will be the same fact-finder who will ultimately decide the question of permanent injunctive relief. After all, in cases like this, the district judge is essentially predicting what he or she—not a jury or hypothetical reasonable person—will decide at the end- of the day.
Respectfully, the panel opinion departed from these rules of review. Rather than afford the district court’s factual finding about the Governor’s intentions the deference it was due, the panel offered its own independent assessment of the record. As Judge Bacharach’s panel dissent and his concurrence today both observe, in doing so the panel employed a “more searching” standard of review than our precedents “permit[ ].” Judge Bacharach Concur, at 1307; Planned Parenthood Ass’n of Utah v. Herbert, 828 F.3d 1245, 1270 (Bacharach, J., concurring in part ánd dissenting in part). Even Judge Briscoe, the author of the panel opinion, today acknowledges that the panel engaged in de novo review. Judge Briscoe Concur, at 1303. To be sure, the panel offered two (albeit alternative) arguments in defense of its approach. But, *1309 respectfully, neither supports the panel’s departure from our normal rules of review.
First, the'panel asserted that no deference was due because the district court failed to supply a factual finding about the Governor’s intentions. Planned Parenthood Ass’n of Utah, 828 F.3d at 1261 n.6. But the district court did precisely that: it expressly found that the Governor “did not retaliate against Plaintiff’ and it proceeded to supply many and extensive reasons for its finding.[2] See Cypert v. Indep. Sch. Dist. No. 1-050 of Osage Cty., 661 F.3d 477, 483 (10th Cir. 2011) (noting whether the defendant retaliated against the plaintiff for engaging in constitutionally protected activity is “ordinarily for the trier of fact”); Maestas v. Segura, 416 F.3d 1182, 1187-88 (10th Cir. 2005) (same). Besides, even supposing (counterfactually) that the district court had failed to offer a finding on the only and hotly disputed factual question in this case, it would have failed its duty under Fed. R, Civ. P. 52(a)(2) to supply a necessary finding and the proper course for this court would have been to remand the matter for . the district court to discharge its fact-finding function, not to attempt our own de novo assessment of the record on appeal. See id. (“In granting or refusing an interlocutory injunction, the court must ... state the findings ... that support its action.”); Joseph A. by Wolfe v. N.M. Dep’t of Human Servs., 69 F.3d 1081, 1087-89 (10th Cir. 1995) (remanding to the district court to make adequate factual findings).
Second, and proceeding in the opposite direction, the panel summarily suggested in a footnote that any finding the district court did make had to have been clearly erroneous. Planned Parenthood Ass’n of Utah, 828 F.3d at 1261 n.6. But the panel never proceeded to explain why the district court’s finding qualified as “plainly implausible,” “irrational,” or enjoyed “no support” in the record. And surely merely being “unconvinc[ed],” as the court-professed to be, will not do. Id. at 1261. Neither, for that matter, could the panel have found the district court’s finding reversible under the correct standard of review had it tried, for as Judge Bacharach explained and as we shall see in a moment, PPAU offered “virtually no evidence” to support its account of the Governor’s intentions and the record “easily” permitted, whether or not it compelled, the finding the district court offered. Judge Bacharach Concur, at 1306-07; Planned Parenthood Ass’n of Utah, 828 F.3d at 1269 (Bachar-ach, J., concurring in part and dissenting in part).[3]
*1310 Next consider the burden of proof. Even if the panel, could have properly applied a de novo standard of review, a preliminary injunction still remained an “extraordinary remedy” and it fell to PPAU as the movant to show its “right to relief ... clearly] and unequivocally].” Petrella, 787 F.3d at 1256. True, this court once suggested that the plaintiffs burden on the likelihood of success factor may be relaxed when the other preliminary injunction factors are satisfied. See Nova Health Sys. v. Edmondson, 460 F.3d 1295, 1298 n.6 (10th Cir. 2006). But, as Judge Bacharach’s panel dissent noted, the Supreme Court has since cast doubt on that judgment. See Planned Parenthood Ass’n of Utah, 828 F.3d at 1267-68 (Bacharach, J., concurring in part and dissenting in part) (citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)). See also Diñé Citizens Against Ruining Our Environment v. Jewell, 839 F.3d 1276, 1281-83, No. 15-2130, 2016 WL 6301136 (10th Cir. Oct. 27, 2016).
Respectfully, the panel in this case not only conducted its own de novo review of the record, it relaxed PPAU’s burden of proof and even seemed to reverse it. For PPAU to prevail in the case as litigated, everyone acknowledges, it had to show that the Governor’s real reason for his decision was something secret and different than he now contends it to be. Yet, it is undisputed that when the Governor announced his decision to discontinue funding he contemporaneously explained that his decision came in direct response to the videos. And it is undisputed, too, that the Governor was free as a matter of law to suspend the funding in question for this reason. To be sure, the panel cited the fact that the Governor has long opposed abortion and, from this, inferred that he wanted to punish the group for its lawful abortion advocacy. But it is undisputed that the Governor has held office since 2009 and had taken no action against PPAU until shortly after the release of the videos in 2015. And it is undisputed that the Governor has repeatedly granted or extended funding to PPAU for numerous programs since taking office. So it is that, analytically, to reach the decision it did the panel had to dismiss the Governor’s evidence suggesting an obvious and temporally proximate potential cause of the group’s asserted injury—the videos—in favor of PPAU’s evidence suggesting a temporally remote potential cause that was itself contradicted by intervening evidence. And whatever else might be said about this proof, it’s hard to see how it could qualify as clear and unequivocal proof that PPAU was likely to succeed on the merits. As Judge Bacharach observed, a proper application of the burden of proof “easily” required affirmance. Planned Parenthood Ass’n of Utah, 828 F.3d at 1269-71 (Bacharach, J., concurring in part and dissenting in part); Judge Bacharach Concur, at 1306-07.
Indeed, the panel’s relaxation of the burden of proof in this manner sits at odds with a very large body of circuit precedent. In so many fields (like employment or business disputes) this court routinely holds proof exactly like PPAU’s—pointing to a temporally remote cause and disregarding proof of alternative and interven- *1311 mg causes—insufficient even to survive summary judgment. See Trujillo v. Pacifi-Corp, 524 F.3d 1149, 1157 n.5 (10th Cir. 2008). (collecting cases dismissing similar causation claims as too speculative). And it is difficult to see how this court could, consistent with so much precedent, hold proof along the very same lines sufficient to establish a likelihood of success.
Faced with the problem that PPAU itself presented “virtually no evidence” to discharge its burden of proof consistent with circuit precedent, Planned Parenthood Ass’n of Utah, 828 F.3d at 1269-71 (Bacharach, J., concurring in part and dissenting in part), the panel proceeded to supplement the group’s arguments for reversal with a new one of its own creation. The panel asserted that the Governor, in a brief he submitted to the district court, “admi[tted]” that he knew the videos to be fabrications. And in light of this asserted admission, the panel reasoned, the Governor surely could not have relied on the videos as grounds for his decision to discontinue funding. Indeed, the panel placed great stress on this argument when explaining its grounds for reversal. See Planned Parenthood Ass’n of Utah, 828 F.3d at 1261-62.
But, respectfully, this new argument only serves to highlight the problems with the panel opinion. For here, in its final and key movement, the panel advanced and adjudicated an argument for reversal that PPAU never made—not in this court, not in the district court. All in spite of and without discussing this court’s rule that it will not normally pursue arguments for reversal that an appellant hasn’t presented on appeal or preserved in the district court. See Verio v. Martinez, 820 F.3d 1113, 1132 (10th Cir. 2016); Richison v. Ernest Grp., Inc., 634 F.3d 1123, 1127 (10th Cir. 2011).
Perhaps even more troubling still, proceeding without the benefit of adversarial testing the panel proceeded to make a mistake, one inconsistent with the sort of comity this court normally seeks to show the States and their elected representatives. For a look at the Governor’s district court brief quickly reveals the reason why PPAU never attempted the panel’s new argument: the brief contains nothing like the bombshell admission the panel attributed to it. The Governor’s brief says simply that, for “purposes of this brief opposing [the] motion for preliminary injunction, Governor Herbert does not dispute” the factual allegations in paragraphs 12 through 22 of PPAU’s complaint “describing [his] response to the videos.” Defs Mem. Opp’n. to Pis. Mot. for Prelim. Inj. at ix, ECF No. 19 (emphasis added). The panel apparently overlooked the qualifying phrase “describing his response to the videos” and assumed that the Governor admitted all of PPAU’s allegations. In fact, the Governor’s brief merely and unsurprisingly acknowledges the complaint’s description of the Governor’s response to the videos—namely that, shortly after viewing them, he came to the belief that Planned Parenthood’s conduct warranted the de-funding of certain programs. Indeed, it is hard to imagine that the Governor’s able lawyers would have conceded away their entire case while still opposing relief, all without PPAU’s equally able lawyers noticing at any time throughout extensive district court and appellate proceedings. See Planned Parenthood Ass’n of Utah, 828 F.3d at 1269-70 (Bacharach, J., concurring in part and dissenting in part) (noting the absence of any admission). And it seems more than a little at odds with the comity federal courts normally afford the States and their elected representatives for this court, on its own motion, to attribute to a sitting Governor an admission he never made in order to discredit, in a published judicial opinion, the statements he publicly offered for his official actions. *1312 See Rizzo v. Goode, 423 U.S. 362, 378-79, 96 S.Ct 598, 46 L.Ed.2d 561 (1976) (“Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.” (internal quotation marks omitted)).
*
Respectfully, this case warrants rehearing. As it stands, the panel opinion leaves litigants in preliminary injunction disputes reason to worry that this court will sometimes deny deference to district court factual findings; relax the burden of proof by favoring attenuated causal claims our precedent disfavors; and invoke arguments for reversal untested by the parties, unsupported by the record, and inconsistent with principles of comity. Preliminary injunction disputes like this one recur regularly and ensuring certainty in the rules governing them, and demonstrating that we will apply those rules consistently to all matters that come before us, is of exceptional importance to the law, litigants, lower courts, and future panels alike. I respectfully dissent.

. Judge Briscoe contends that we should be reluctant to grant en banc rehearing sua sponte. See Judge Briscoe Concur, at 1302. And it’s certainly true that the threshold required to win rehearing en banc under Rule 35(a) is and should be a very high one. But any suggestion that en banc proceedings should only, come by way of motion from the parties, or that sua sponte en banc polls and proceedings like this one are somehow irregular, would be quite mistaken. Sua sponte en banc proceedings have played a long and familiar role in federal appellate practice. See, e.g., United States v. Sturm, 672 F.3d 891, 895 (10th Cir. 2012); United States v. Hardman, 297 F.3d 1116, 1118 (10th Cir. 2002); United States v. Singleton, 144 F.3d 1343, 1361-62 (10th Cir. 1998); United States v. Hill, 53 F.3d 1151, 1152 (10th Cir. 1995); see also 16AA Charles Alan Wright et al., Fed. Frac. & Proc. § 3981.2 (4th ed. 2008) (noting that "[a] court of appeals may decide on its own motion to sit en banc" and collecting cases). No doubt, too, the power to call for rehearing sua sponte exists for good reason, for otherwise a panel opinion could ensconce precedentially binding error into circuit law that the full court would be powerless to correct only because of the fortuity that the parties who could seek review happen to lack sufficient incentive to do so (say because of a settlement or extralegal considerations). Cf. W. Pac. R. Corp. v. W. Pac. R. Co., 345 U.S. 247, 260 n.20, 73 S.Ct. 656, 97 L.Ed. 986 (1953) (en banc rehearing is "an important and useful device in the administration of justice”).

. "Gary Herbert has been the Governor of Utah for the past six years. Although Plaintiff has been associated with other pro-choice entities since Governor Herbert took office and it started performing abortions in Utah in 2011, the Governor still allowed the [Utah Department .of Health] to -enter into and maintain contracts with Plaintiff. It was not until the videos were released that the Governor acted to terminate the contracts. Indeed, Plaintiff alleges and ■ the defendants do not dispute that the Governor said, "We now have video where they’re, selling fetus body parts for money- and it’s an outrage and the people of Utah, are; outraged. I’m outraged. So for coloring outside the lines, [Plaintiff] forfeits some of [its] benefits.’ Complaint, ¶ 14. (Dkt. No. 2). Both the Governor’s words and the temporal proximity between the release of the videos and his directive to terminate the contracts support he did not retaliate against Plaintiff based upon its right of association nor its right to advocate for and perform abortions. Therefore, the court concludes Plaintiff is unlikely to preváil on its unconstitutional condition claims.” Planned Parenthood Ass’n of Utah v. Herbert, No. 2:15-CV-693, 2015 WL 9412539, at *6 (D. Utah Dec. 22, 2015) (second and third alterations in original).

, Separately, the panel also briefly suggested that it would have been “unusual” for the district court to issue findings of fact at the preliminary injunction stage in this particular *1310 case given that discovery had just begun. Planned Parenthood Ass’n of Utah, 828 F.3d at 1261 n.6. But, as we've seen, district courts must provide any factual findings necessary to support their preliminary injunction rulings under Fed. R. Civ. P. 52(a)(2); their findings are due our deference even when based on purely documentary proof under Anderson, 470 U.S. at 574, 105 S.Ct. 1504; and district courts routinely decide preliminary injunction disputes before the great grinding gears of our civil discovery process engage.