**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 28, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

PLANNED PARENTHOOD
ASSOCIATION OF UTAH,

    Plaintiff - Appellant,

v.

GARY R. HERBERT, in his official
capacity as Governor of the State of Utah;
JOSEPH K. MINER, M.D., in his official
capacity as Executive Director of the Utah
Department of Health,

    Defendants - Appellees.

No. 15-4189
(D.C. No. 2:15-CV-00693-CW)
(D. Utah)

_____

**ORDER**
_____

Before **TYMKOVICH**, Chief Judge, **KELLY**, **BRISCOE**, **LUCERO**, **HARTZ**, **GORSUCH**, **HOLMES**, **BACHARACH**, **PHILLIPS**, and **MORITZ**, Circuit Judges.[*]
_____

On July 12, 2016, the original panel opinion issued in this matter. Subsequent to that issuance, a poll was called, *sua sponte*, to consider en banc rehearing. Upon that consideration, a majority of the active available judges of the court voted to deny. *See* Fed. R. App. P. 35(a). Chief Judge Tymkovich, as well as Judges Hartz, Gorsuch, and Holmes voted to grant en banc rehearing.

_____

[*] The Honorable Scott Matheson and the Honorable Carolyn McHugh are recused in this matter and did not participate in the *sua sponte* consideration of en banc rehearing.

Judge Briscoe has written separately in concurrence to the denial of en banc rehearing, as has Judge Bacharach. Judge Gorsuch has written separately in dissent. Judges Tymkovich, Hartz and Holmes join in that dissent.

A copy of this order shall stand as a supplement to the mandate issued on August 8, 2016.


Entered for the Court

ELISABETH A. SHUMAKER, Clerk

No. 15-4189, *Planned Parenthood Association of Utah v. Herbert*

**BRISCOE**, Circuit Judge, concurring in the denial of rehearing en banc.

I write in support of the denial of rehearing *en banc* for two reasons: to comment on the unusual procedural step this court has taken in this untimely *sua sponte* request for an *en banc* poll, and to set the record straight regarding the merits of the panel decision.

I

From a procedural perspective, our consideration and denial of rehearing *en banc* will surely come as a surprise to the parties, who have clearly moved on. The parties intentionally bypassed further review by the panel or the full court, and instead returned to the district court. And the parties have since stipulated to the entry of a preliminary injunction in favor of plaintiff Planned Parenthood Association of Utah (PPAU).

As our docket reflects, both the panel opinion and the judgment in this case issued on July 12, 2016. The July 26, 2016 deadline for filing a petition for rehearing *en banc* subsequently passed without the parties taking any action. See Fed. R. App. P. 35(c) ("A petition for rehearing en banc must be filed within the time prescribed by Rule 40 for filing a petition for rehearing."); Fed. R. App. P. 40(a)(1) ("Unless the time is shortened or extended by order or local rule, a petition for panel rehearing may be filed within 14 days after entry of judgment."); see also Fed. R. App. P. 26(a)(1) (outlining how time is computed under the Federal Rules of Appellate Procedure "[w]hen the period is stated in

days"). Under the Federal Rules of Appellate Procedure and our own Tenth Circuit Rules, that left only the mandate to issue.

On August 1, 2016, however, a member of this court, acting despite the absence of a timely filed petition for rehearing by any party, called for a poll. The poll ultimately failed by a vote of 6 to 4, with two judges recusing. The mandate issued on August 8, 2016, prior to the completion of voting, but after it was clear that the poll would fail. According to the district court's docket, the parties, unaware of our untimely *sua sponte* activities, stipulated to the entry of a preliminary injunction in favor of PPAU on August 31, 2016, and have moved on with this litigation in district court.

In my view, we should be extraordinarily cautious in exercising our inherent authority to *sua sponte* rehear a case when the parties themselves have chosen not to seek *en banc* review. And, presumably, our inherent authority in that regard is, at an absolute minimum, bounded by the standards outlined in Fed. R. App. P. 35 and 10th Cir. R. 35. Although the dissent cites to the standard for *en banc* review outlined in Fed. R. App. 35(a) and asserts that "the panel acted inconsistently with this court's previously uniform practice when it comes to questions concerning our standard of review and the burden of proof," Dissent at 2, there is simply no substance to that assertion, and thus no justification for the unusual procedure that has been invoked.

2

II

Turning to the merits, the dissent mischaracterizes this litigation and the panel opinion at several turns. To begin with, the dissent incorrectly states that "the preliminary injunction motion turned in significant measure on the question whether [PPAU] could show that it was likely to succeed at trial on its unconstitutional conditions claim." Dissent at 1. As a matter of fact, PPAU asserted three claims—an equal protection claim and two unconstitutional conditions claims—and a substantial portion of the panel opinion was devoted to analyzing whether PPAU had established a substantial likelihood of success on the merits of its equal protection claim (the panel agreed with the district court that PPAU failed in this regard).

As for the unconstitutional conditions claims, it is true that PPAU's likelihood of success ultimately turned on the assessment of evidence concerning Governor Herbert's motive for issuing the August 14, 2015 directive. See Planned Parenthood Ass'n of Utah v. Herbert, — F.3d —, 2016 WL 3742008 at *12 (10th Cir. July 12, 2016) ("[T]hat leaves the question of whether PPAU can establish that Herbert issued the Directive in retaliation for PPAU's exercise of those [constitutional] rights."). But the dissent again mischaracterizes how both the district court and the panel performed this assessment. To begin with, the dissent incorrectly states that "the district court found that the Governor's stated intention appeared to be his true intention" in suspending PPAU's funding.

3

Dissent at 2. In other words, the dissent states that the district court made an express finding of fact "that the Governor 'did not retaliate against Plaintiff.'" Id. at 4 (quoting Planned Parenthood Ass'n of Utah v. Herbert, No. 2:15-CV-693, 2015 WL 9412539, at *6 (D. Utah Dec. 22, 2015)). The dissent in turn asserts that the panel proceeded to review that factual finding *de novo*. Id.

What in truth occurred is that the panel, after carefully considering the district court's opinion, concluded that the district court did not make a factual finding regarding the Governor's motive for issuing the directive, but rather made a legal determination regarding whether the limited evidence before it would be sufficient to allow a factfinder to find in favor of PPAU on the motive issue. Planned Parenthood, — F.3d —, 2016 WL 3742008 at *12, n.6 ("As we read the above-quoted language, the district court was merely assessing the limited evidence presented by the parties and determining, as a matter of law, whether PPAU had established a likelihood of succeeding on its unconstitutional conditions claim."). Indeed, the panel remarked that "it would have been unusual for the district court to make a factual finding on this key issue, given the procedural posture of the case, the fact that no witnesses testified at the preliminary injunction hearing, and the fact that Herbert ha[d] not been deposed yet." Id. And the panel in turn reviewed the district court's legal determination *de novo*. In a related footnote, the panel also stated that, "even assuming that the district court intended to make a factual finding on this issue, we conclude that

such finding was clearly erroneous." Id. That is because the district court failed to consider at all the admissions made by Governor Herbert in responding to PPAU's motion for preliminary injunction.

Dissatisfied with the panel's analysis, the dissent asserts that Rule 52(a)(2) imposed an obligation on the district court "to offer a finding on the only and hotly disputed question in this case," i.e., Governor Herbert's motive for issuing the directive, and that "the proper course for [the panel] would have been to remand the matter for the district court to discharge its fact-finding function, not to attempt [its] own *de novo* assessment of the record on appeal." Dissent at 5.

The problem with this assertion is two-fold. First, the dissent misreads Rule 52(a)(2). That rule states: "In granting or refusing an interlocutory injunction, the court must . . . state the findings and conclusions that support its action." Fed. R. Civ. P. 52(a)(2). In other words, Rule 52(a)(2) generally "requires [a district] court to make findings of fact and conclusions of law if it grants or refuses a preliminary injunction." 9C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2576 at 283 (3d ed. 2008). But the Rule obviously affords a district court with discretion in how it goes about resolving the unique issues presented in each case. Thus, although the district court in this case could have made a preliminary factual finding regarding Governor Herbert's motive, it did not, in the panel's view, do so, and there was no requirement under Rule 52(a)(2) that the panel remand the case to the district court to make a factual

5

finding on this issue. Second, the panel did not, as the dissent implies, make its own factual findings, but instead properly conducted a *de novo* review of what it deemed to be the district court's legal determination.

The dissent also takes issue with the panel's alternative conclusion that, even assuming the district court intended to make a factual finding regarding Governor Herbert's motive, the district court clearly erred in doing so. To begin with, the dissent complains that "the panel never proceeded to explain *why* the district court's finding qualified as 'plainly implausible,' 'irrational,' or enjoyed 'no support' in the record." Dissent at 6. In turn, the dissent asserts that the panel could not "have found the district court's finding reversible under the correct standard of review had it tried" because "PPAU offered 'virtually no evidence' to support its account of the Governor's intentions." Id. (quoting Judge Bacharach Concur. at 2).

To be sure, the panel opinion did not offer a detailed explanation of its alternative conclusion. But that was precisely because it was an alternative conclusion contained in a footnote. And, most certainly, the lack of a detailed explanation for an alternative holding is certainly no basis for granting *en banc* review. In any event, the panel based its alternative holding on the fact that the district court failed to consider all of the evidence that was contained in the record. Most notably, this included, as described in detail in the panel opinion, the admissions made by Governor Herbert in responding to PPAU's motion for

6

preliminary injunction.

As for those admissions, the dissent suggests that this is a "new" piece of evidence of the panel's "own creation." Dissent at 9. By no means, however, was this a new piece of evidence unbeknownst to the parties or the district court. As the panel opinion clearly noted, it was Herbert's opposition brief to PPAU's motion for preliminary injunction that included the specific admissions to factual allegations contained in PPAU's complaint. Planned Parenthood, — F.3d —, 2016 WL 3742008 at *13 ("[I]n opposing PPAU's motion for preliminary injunction in the district court, Herbert made more specific admissions.").

The dissent then attempts to reframe those admissions, asserting that "[t]he panel apparently overlooked the qualifying phrase 'describing his response to the videos' and assumed that the Governor admitted *all* of PPAU's allegations." Dissent at 10 (emphasis in original). "In fact," the dissent asserts, "the Governor's brief merely and unsurprisingly acknowledges the complaint's description of the Governor's *response* to the videos — namely that, shortly after viewing them, he came to the belief that Planned Parenthood's conduct warranted the defunding of certain programs." Dissent at 10-11 (emphasis in original).

Again, however, this reframing belies the record. As the panel opinion explained,

> PPAU's complaint contains numerous factual allegations regarding Herbert's issuance of the Directive. App., Vol. 1 at 11-14. Defendants, in their memorandum in opposition to PPAU's motion

7

for preliminary injunction, stated: "For only the purposes of this brief opposing [PPAU's] motion for preliminary injunction, Governor Herbert does not dispute the factual allegations in paragraphs 12 through 22 of [PPAU's] Complaint describing his response to the [CMP] videos." Dist. Ct. Docket No. 19 at ix. In other words, Herbert admitted the factual allegations contained in paragraphs 12 through 22 of PPAU's complaint for purposes of the preliminary injunction proceedings.

Planned Parenthood, — F.3d —, 2016 WL 3742008 at *13, n.7. Notably, paragraphs 12 through 22 of PPAU's complaint were contained in the "FACTUAL BACKGROUND" section under a heading entitled "GOVERNOR HERBERT'S DIRECTIVE." Dist. Ct. Docket No. 2 at 6. And, as the panel opinion accurately described them, Herbert's admissions to those paragraphs directly concerned the issuance of his directive:

> To begin with, he admitted that the CMP videos involved other affiliates of Planned Parenthood and not PPAU. [App., Vol. 1] at 12; Dist. Ct. Docket No. 19 at ix. Herbert further admitted that "there is no evidence, or even accusation, that PPAU has 'colored outside' of any lines, including because PPAU does not participate in any program that provides fetal tissue for scientific research." App., Vol. 1 at 12; Dist. Ct. Docket No. 19 at ix. Herbert also admitted that none of the federal funds that flow through the UDOH to PPAU are "used to provide abortions." App., Vol. 1 at 12; Dist. Ct. Docket No. 19 at ix. In addition, Herbert admitted that the accusations made by CMP in the videos regarding Planned Parenthood and its other affiliates had not been proven and indeed were false. App., Vol. 1 at 11-12; Dist. Ct. Docket No. 19 at ix. Lastly, Herbert essentially agreed that the national "political climate ... [wa]s very hostile to Planned Parenthood." App., Vol. 1 at 3; Dist. Ct. Docket No. 19 at viii-ix.

Id. at *13. Had the panel, as the dissent suggests, attributed to the Governor a series of admissions he never made, we presumably would have heard directly

8

from the Governor, either by way of a petition for panel rehearing or a petition for rehearing en banc, that we had misstated the Governor's admissions. The Governor's silence, however, speaks volumes.

The dissent also asserts, curiously, that the panel, by construing Herbert's admissions in the manner that it did, failed to afford "the sort of comity this court normally seeks to show the States and their elected representatives." Dissent at 10. "[T]he notion of comity," however, involves "a proper respect for state functions." Sprint Commc'ns v. Jacobs, 134 S. Ct. 584, 591 (2013); see also Michigan v. Bay Mills Indian Cmty., 134 S. Ct. 2024, 2048 (2014) (noting that "the practical aim of comity" is to "allay[] friction between sovereigns"). Precisely how the panel's interpretation of Herbert's admissions could have violated the notion of comity—an argument, by the way, that Herbert himself has never made—is unclear.

That leaves only one other error that the dissent contends the panel committed: "relax[ing] PPAU's burden of proof and even seem[ing] to reverse it." Dissent at 7. According to the Dissent, PPAU was obligated to "show its 'right to relief . . . clear[ly] and unequivocal[ly],'" and the panel failed to hold PPAU to this obligation. Id. (quoting Petrella v. Brownback, 787 F.3d 1242, 1256 (10th Cir. 2015) (brackets added by Dissent)). There is no merit to the dissent's complaints on this point, however, because the purported error is tied directly to the dissent's mischaracterization of the record and the evidence contained in it, in

9

particular the admissions made by Governor Herbert in responding to PPAU's motion for preliminary injunction. As explained in the panel opinion, the evidence, when considered in its proper context, was more than sufficient for PPAU to carry its burden of proof.

In the end, the panel opinion was faithful to circuit precedent, including the applicable standards of review, and the record on appeal. As a result, there is simply no basis upon which to grant rehearing *en banc*.

No. 15-4189, *Planned Parenthood Association of Utah v. Herbert*

**BACHARACH**, Circuit Judge, concurring in the denial of rehearing en banc.

I continue to respectfully disagree with the panel majority's disposition of the claim involving unconstitutional conditions. Nonetheless, I do not believe that we should take the case en banc.

## I.    Merits

On the merits, the critical issue involves the element of likelihood of success. On this element, I believe our precedent requires us to apply the abuse-of-discretion standard. *See Verlo v. Martinez*, 820 F.3d 1113, 1128 (10th Cir. 2016).

Application of this standard makes sense here, for the likelihood-of-success element requires us to predict the fact-finder's ultimate determination after a full-blown trial. That prediction would involve an intrinsically factual issue: the intent of the Governor in issuing the Directive.

In my view, it is appropriate to apply the abuse-of-discretion standard when the district court must predict what the trier of fact would ultimately find. *See Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996) (applying the abuse-of-discretion standard to the likelihood-of-success inquiry when predicting the eventual outcome on the merits). As a result, I believe that we should follow our precedent in *Verlo v. Martinez*, which establishes the abuse-of-discretion standard on likelihood of success.

As stated in my panel dissent, I do not believe that the district court abused its discretion on the likelihood-of-success inquiry. The district court had little to go on because PPAU had not presented any testimony and its only documentary evidence about the controversial videotapes involved two web articles in the Huffington Post and an email transmitting an article from a website called "Media Matters for America." PPAU said that each governmental agency investigating the videotapes had exonerated Planned Parenthood, but PPAU did not present any evidence from a governmental source or the actual videotapes.

Though PPAU presented virtually no evidence, everyone agreed that Governor Herbert had attributed the Directive to his own reaction to the Planned Parenthood videotapes. To prevail, PPAU had to prove that Governor Herbert's stated reason for the Directive was pretextual—that his true motivation was to punish PPAU for exercising its constitutional rights.

Will PPAU be able to prove that at trial? When given the opportunity to do so at the preliminary injunction hearing, PPAU presented no live testimony and virtually no documentary evidence. In these circumstances, the district court had the discretion to predict that PPAU would not satisfy its burden of proof at trial. Thus, I believe that the panel should have affirmed the denial of a preliminary injunction on the claim of unconstitutional conditions.

## II. En Banc Consideration

Though I respectfully disagree with the panel's disposition, I do not favor en banc consideration because I doubt that the panel opinion will significantly affect future appeals.

Like Judge Gorsuch, I believe that the panel's review of the district court's ruling was more searching than the abuse-of-discretion standard permits. But this disagreement is unlikely to affect future cases, for the panel stated that it was reviewing the district court's order for an abuse of discretion.

Though I respectfully disagree with the panel majority on how it applied this standard, my disagreement involves the application of the standard rather than the standard itself, for the panel did not articulate a more searching standard of review (such as de novo review) on likelihood of success. Nor did the panel majority disavow the need for clear, unequivocal proof to justify a preliminary injunction. Thus, I do not believe that the panel opinion will significantly affect future appeals.

No. 15-4189, *Planned Parenthood Association of Utah v. Herbert*

**GORSUCH**, Circuit Judge, joined by **TYMKOVICH**, Chief Judge, and **HARTZ** and **HOLMES**, Circuit Judges, dissenting from the denial of rehearing en banc.

A great deal about this case is undisputed. Shortly after the public release of videos allegedly showing Planned Parenthood officials negotiating the sale of fetal tissue, the Governor of Utah announced his belief that the conduct was illegal and warranted the suspension of public funding for four programs run by Planned Parenthood Association of Utah (PPAU), the local Planned Parenthood affiliate. PPAU responded by bringing a lawsuit and seeking a preliminary injunction to force the State's continued funding of the four programs in question. As litigated by the parties, the preliminary injunction motion turned in significant measure on the question whether the organization could show that it was likely to succeed at trial on its unconstitutional conditions claim. And even on that claim the parties' dispute proved pretty narrow, for everyone agreed on the law. If the Governor discontinued funding because of the group's affiliation with those accused of illegally selling fetal tissue — as he said he did — the parties agreed that no constitutional violation had taken place. But if the Governor discontinued funding for a different and secret reason — in retaliation for the group's advocacy of lawful abortions — both sides accepted that a constitutional violation had occurred.

So it is that the question of preliminary relief on PPAU's unconstitutional conditions claim hinged on a question of fact: what was the Governor's intention in suspending funding? *See* Judge Briscoe Concur. at 3 ("[I]t is true that PPAU's likelihood of success ultimately turned on the assessment of evidence concerning Governor Herbert's motives . . . ."). On the preliminary evidentiary record before it, the district court found that the Governor's stated intention appeared to be his true intention and that PPAU hadn't shown it was likely to prove otherwise at trial. Accordingly, it denied the motion for preliminary relief. But when the case reached this court, a panel disagreed and ordered the Governor to fund PPAU. In doing so, I respectfully submit, the panel acted inconsistently with this court's previously uniform practice when it comes to questions concerning our standard of review and the burden of proof, questions of considerable legal significance. *See* Fed. R. App. P. 35(a) (*en banc* review is appropriate to "maintain uniformity of the court's decisions; or . . . [if] the proceeding involves a question of exceptional importance").[1]

---

[1] Judge Briscoe contends that we should be reluctant to grant *en banc* rehearing *sua sponte*. *See* Judge Briscoe Concur. at 2. And it's certainly true that the threshold required to win rehearing *en banc* under Rule 35(a) is and should be a very high one. But any suggestion that *en banc* proceedings should only come by way of motion from the parties, or that *sua sponte en banc* polls and proceedings like this one are somehow irregular, would be quite mistaken. *Sua sponte en banc* proceedings have played a long and familiar role in federal appellate practice. *See, e.g.*, *United States v. Sturm*, 672 F.3d 891, 895 (10th Cir. 2012); *United States v. Hardman*, 297 F.3d 1116, 1118 (10th Cir. 2002); *United States v. Singleton*, 144 F.3d 1343, 1361-62 (10th Cir. 1998); *United States v.*

\*

Consider first the standard of review. Because a preliminary injunction is a form of discretionary equitable relief — and a temporary one at that — we review the district court's decision only for abuse of discretion. *Petrella v. Brownback*, 787 F.3d 1242, 1256 (10th Cir. 2015). Where, as here, everything turns on the resolution of a factual dispute, that means "[w]e will not challenge [the district court's] evaluation [of the evidence] unless it finds no support in the record . . . or follows from a plainly implausible, irrational, or erroneous reading of the record." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003); Fed. R. Civ. P. 52(a)(6) (factual findings may be set aside only if clearly erroneous). This deferential standard applies even when the district court makes factual findings concerning documentary proof rather than live testimony. *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985). And no doubt that kind of deference is especially appropriate where, as here, the fact-finding district judge at the preliminary injunction stage will be the same fact-finder who will

---

*Hill*, 53 F.3d 1151, 1152 (10th Cir. 1995); *see also* 16AA Charles Alan Wright et al., Fed. Prac. & Proc. § 3981.2 (4th ed. 2008) (noting that "[a] court of appeals may decide on its own motion to sit *en banc*" and collecting cases). No doubt, too, the power to call for rehearing *sua sponte* exists for good reason, for otherwise a panel opinion could ensconce precedentially binding error into circuit law that the full court would be powerless to correct only because of the fortuity that the parties who could seek review happen to lack sufficient incentive to do so (say because of a settlement or extralegal considerations). *Cf. W. Pac. R. Corp. v. W. Pac. R. Co.*, 345 U.S. 247, 260 n.20 (1953) (*en banc* rehearing is "an important and useful device in the administration of justice").

-3-

ultimately decide the question of permanent injunctive relief. After all, in cases like this, the district judge is essentially predicting what he or she — not a jury or hypothetical reasonable person — will decide at the end of the day.

Respectfully, the panel opinion departed from these rules of review. Rather than afford the district court's factual finding about the Governor's intentions the deference it was due, the panel offered its own independent assessment of the record. As Judge Bacharach's panel dissent and his concurrence today both observe, in doing so the panel employed a "more searching" standard of review than our precedents "permit[]." Judge Bacharach Concur. at 3; *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1270 (Bacharach, J., concurring in part and dissenting in part). Even Judge Briscoe, the author of the panel opinion, today acknowledges that the panel engaged in *de novo* review. Judge Briscoe Concur. at 4. To be sure, the panel offered two (albeit alternative) arguments in defense of its approach. But, respectfully, neither supports the panel's departure from our normal rules of review.

First, the panel asserted that no deference was due because the district court failed to supply a factual finding about the Governor's intentions. *Planned Parenthood Ass'n of Utah*, 828 F.3d at 1261 n.6. But the district court did precisely that: it expressly found that the Governor "did not retaliate against

Plaintiff" and it proceeded to supply many and extensive reasons for its finding.[2]

*See Cypert v. Indep. Sch. Dist. No. I-050 of Osage Cty.*, 661 F.3d 477, 483 (10th Cir. 2011) (noting whether the defendant retaliated against the plaintiff for engaging in constitutionally protected activity is "ordinarily for the trier of fact"); *Maestas v. Segura*, 416 F.3d 1182, 1187-88 (10th Cir. 2005) (same). Besides, even supposing (counterfactually) that the district court had failed to offer a finding on the only and hotly disputed factual question in this case, it would have failed its duty under Fed. R. Civ. P. 52(a)(2) to supply a necessary finding and the proper course for this court would have been to remand the matter for the district court to discharge its fact-finding function, not to attempt our own *de novo* assessment of the record on appeal. *See id.* ("In granting or refusing an

---

[2] "Gary Herbert has been the Governor of Utah for the past six years. Although Plaintiff has been associated with other pro-choice entities since Governor Herbert took office and it started performing abortions in Utah in 2011, the Governor still allowed the [Utah Department of Health] to enter into and maintain contracts with Plaintiff. It was not until the videos were released that the Governor acted to terminate the contracts. Indeed, Plaintiff alleges and the defendants do not dispute that the Governor said, 'We now have video where they're selling fetus body parts for money and it's an outrage and the people of Utah are outraged. I'm outraged. So for coloring outside the lines, [Plaintiff] forfeits some of [its] benefits.' Complaint, ¶ 14 (Dkt. No. 2). Both the Governor's words and the temporal proximity between the release of the videos and his directive to terminate the contracts support he did not retaliate against Plaintiff based upon its right of association nor its right to advocate for and perform abortions. Therefore, the court concludes Plaintiff is unlikely to prevail on its unconstitutional condition claims." *Planned Parenthood Ass'n of Utah v. Herbert*, No. 2:15-CV-693, 2015 WL 9412539, at *6 (D. Utah Dec. 22, 2015) (second and third alterations in original).

interlocutory injunction, the court must . . . state the findings . . . that support its action."); *Joseph A. by Wolfe v. N.M. Dep't of Human Servs.*, 69 F.3d 1081, 1087-89 (10th Cir. 1995) (remanding to the district court to make adequate factual findings).

Second, and proceeding in the opposite direction, the panel summarily suggested in a footnote that any finding the district court did make had to have been clearly erroneous. *Planned Parenthood Ass'n of Utah*, 828 F.3d at 1261 n.6. But the panel never proceeded to explain *why* the district court's finding qualified as "plainly implausible," "irrational," or enjoyed "no support" in the record. And surely merely being "unconvinc[ed]," as the court professed to be, will not do. *Id.* at 1261. Neither, for that matter, could the panel have found the district court's finding reversible under the correct standard of review had it tried, for as Judge Bacharach explained and as we shall see in a moment, PPAU offered "virtually no evidence" to support its account of the Governor's intentions and the record "easily" permitted, whether or not it compelled, the finding the district court offered. Judge Bacharach Concur. at 2; *Planned Parenthood Ass'n of Utah*, 828 F.3d at 1269 (Bacharach, J., concurring in part and dissenting in part).[3]

---

[3] Separately, the panel also briefly suggested that it would have been "unusual" for the district court to issue findings of fact at the preliminary injunction stage in this particular case given that discovery had just begun. *Planned Parenthood Ass'n of Utah*, 828 F.3d at 1261 n.6. But, as we've seen, district courts *must* provide any factual findings necessary to support their preliminary injunction rulings under Fed. R. Civ. P. 52(a)(2); their findings are

Next consider the burden of proof. Even if the panel could have properly applied a *de novo* standard of review, a preliminary injunction still remained an "extraordinary remedy" and it fell to PPAU as the movant to show its "right to relief . . . clear[ly] and unequivocal[ly]." *Petrella*, 787 F.3d at 1256. True, this court once suggested that the plaintiff's burden on the likelihood of success factor may be relaxed when the other preliminary injunction factors are satisfied. *See Nova Health Sys. v. Edmondson*, 460 F.3d 1295, 1298 n.6 (10th Cir. 2006). But, as Judge Bacharach's panel dissent noted, the Supreme Court has since cast doubt on that judgment. *See Planned Parenthood Ass'n of Utah*, 828 F.3d at 1267-68 (Bacharach, J., concurring in part and dissenting in part) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). *See also Diné Citizens Against Ruining Our Environment v. Jewell*, — F.3d —, No. 15-2130, slip op. at 9-11 (10th Cir. Oct. 27, 2016).

Respectfully, the panel in this case not only conducted its own *de novo* review of the record, it relaxed PPAU's burden of proof and even seemed to reverse it. For PPAU to prevail in the case as litigated, everyone acknowledges, it had to show that the Governor's real reason for his decision was something

---

due our deference even when based on purely documentary proof under *Anderson*, 470 U.S. at 574; and district courts routinely decide preliminary injunction disputes before the great grinding gears of our civil discovery process engage.

-7-

secret and different than he now contends it to be. Yet, it is undisputed that when the Governor announced his decision to discontinue funding he contemporaneously explained that his decision came in direct response to the videos. And it is undisputed, too, that the Governor was free as a matter of law to suspend the funding in question for this reason. To be sure, the panel cited the fact that the Governor has long opposed abortion and, from this, inferred that he wanted to punish the group for its lawful abortion advocacy. But it is undisputed that the Governor has held office since 2009 and had taken no action against PPAU until shortly after the release of the videos in 2015. And it is undisputed that the Governor has repeatedly granted or extended funding to PPAU for numerous programs since taking office. So it is that, analytically, to reach the decision it did the panel had to dismiss the Governor's evidence suggesting an obvious and temporally proximate potential cause of the group's asserted injury — the videos — in favor of PPAU's evidence suggesting a temporally remote potential cause that was itself contradicted by intervening evidence. And whatever else might be said about this proof, it's hard to see how it could qualify as clear and unequivocal proof that PPAU was likely to succeed on the merits. As Judge Bacharach observed, a proper application of the burden of proof "easily" required affirmance. *Planned Parenthood Ass'n of Utah*, 828 F.3d at 1269-71 (Bacharach, J., concurring in part and dissenting in part); Judge Bacharach Concur. at 2.

-8-

Indeed, the panel's relaxation of the burden of proof in this manner sits at odds with a very large body of circuit precedent. In so many fields (like employment or business disputes) this court routinely holds proof exactly like PPAU's — pointing to a temporally remote cause and disregarding proof of alternative and intervening causes — insufficient even to survive summary judgment. *See Trujillo v. PacifiCorp*, 524 F.3d 1149, 1157 n.5 (10th Cir. 2008) (collecting cases dismissing similar causation claims as too speculative). And it is difficult to see how this court could, consistent with so much precedent, hold proof along the very same lines sufficient to establish a likelihood of success.

Faced with the problem that PPAU itself presented "virtually no evidence" to discharge its burden of proof consistent with circuit precedent, *Planned Parenthood Ass'n of Utah*, 828 F.3d at 1269-71 (Bacharach, J., concurring in part and dissenting in part), the panel proceeded to supplement the group's arguments for reversal with a new one of its own creation. The panel asserted that the Governor, in a brief he submitted to the district court, "admi[tted]" that he knew the videos to be fabrications. And in light of this asserted admission, the panel reasoned, the Governor surely could not have relied on the videos as grounds for his decision to discontinue funding. Indeed, the panel placed great stress on this argument when explaining its grounds for reversal. *See Planned Parenthood Ass'n of Utah*, 828 F.3d at 1261-62.

But, respectfully, this new argument only serves to highlight the problems with the panel opinion.  For here, in its final and key movement, the panel advanced and adjudicated an argument for reversal that PPAU never made — not in this court, not in the district court.  All in spite of and without discussing this court's rule that it will not normally pursue arguments for reversal that an appellant hasn't presented on appeal or preserved in the district court.  *See Verlo v. Martinez*, 820 F.3d 1113, 1132 (10th Cir. 2016); *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011).

Perhaps even more troubling still, proceeding without the benefit of adversarial testing the panel proceeded to make a mistake, one inconsistent with the sort of comity this court normally seeks to show the States and their elected representatives.  For a look at the Governor's district court brief quickly reveals the reason why PPAU never attempted the panel's new argument:  the brief contains nothing like the bombshell admission the panel attributed to it.  The Governor's brief says simply that, for "purposes of this brief opposing [the] motion for preliminary injunction, Governor Herbert does not dispute" the factual allegations in paragraphs 12 through 22 of PPAU's complaint "*describing [his] response to the videos.*"  Defs Mem. Opp'n. to Pls. Mot. for Prelim. Inj. at ix, ECF No. 19 (emphasis added).  The panel apparently overlooked the qualifying phrase "describing his response to the videos" and assumed that the Governor admitted *all* of PPAU's allegations.  In fact, the Governor's brief merely and

unsurprisingly acknowledges the complaint's description of the Governor's *response* to the videos — namely that, shortly after viewing them, he came to the belief that Planned Parenthood's conduct warranted the defunding of certain programs. Indeed, it is hard to imagine that the Governor's able lawyers would have conceded away their entire case while still opposing relief, all without PPAU's equally able lawyers noticing at any time throughout extensive district court and appellate proceedings. *See Planned Parenthood Ass'n of Utah*, 828 F.3d at 1269-70 (Bacharach, J., concurring in part and dissenting in part) (noting the absence of any admission). And it seems more than a little at odds with the comity federal courts normally afford the States and their elected representatives for this court, on its own motion, to attribute to a sitting Governor an admission he never made in order to discredit, in a published judicial opinion, the statements he publicly offered for his official actions. *See Rizzo v. Goode*, 423 U.S. 362, 378-79 (1976) ("Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." (internal quotation marks omitted)).

*

Respectfully, this case warrants rehearing. As it stands, the panel opinion leaves litigants in preliminary injunction disputes reason to worry that this court will sometimes deny deference to district court factual findings; relax the burden

-11-

of proof by favoring attenuated causal claims our precedent disfavors; and invoke arguments for reversal untested by the parties, unsupported by the record, and inconsistent with principles of comity. Preliminary injunction disputes like this one recur regularly and ensuring certainty in the rules governing them, and demonstrating that we will apply those rules consistently to all matters that come before us, is of exceptional importance to the law, litigants, lower courts, and future panels alike. I respectfully dissent.